J-S16013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT ALICEA | : | |
| | : | |
| Appellant | : | No. 1378 EDA 2018 |

Appeal from the Judgment of Sentence December 5, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003525-2015

BEFORE: DUBOW, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.: **FILED APRIL 21, 2020**

Appellant, Robert Alicea, appeals from the December 5, 2017 Judgment of Sentence entered in the Philadelphia County Court of Common Pleas following his jury conviction of Attempted Rape of a child; Aggravated Indecent Assault of a child; Unlawful Contact With a Minor; Endangering the Welfare of a Child ("EWOC"); Corruption of Minors ("COM"); and Indecent Assault of a child.[1] On appeal, Appellant challenges the sufficiency of the evidence in support of his convictions. After careful review, we affirm.

The relevant facts and procedural history, as gleaned from the record, are as follows. On March 10, 2015, A.A. (the "victim") reported to Philadelphia Police Officer Kathryn Lewis that several years earlier, in 2008 or 2009, her

_____

[1] 18 Pa.C.S. §§ 901(a), 3125(b), 6318(a)(1), 4304(a)(1), 6301(a)(1), and 3126(a)(7), respectively.

uncle, Appellant, had "touched her private parts."[2] Officer Lewis and Detective Brian Meissler from the Special Victims Unit interviewed the victim. The victim positively identified Appellant as her perpetrator. The victim reported that she was eight or nine years old when the incident occurred. The victim's mother reported that the victim was eight.

Police arrested Appellant, and on August 17, 2017, his jury trial commenced. The Commonwealth presented the testimony of the victim, her mother, Officer Lewis, and Detective Meissler.

Relevantly, the victim testified that when she was growing up she would see Appellant at her maternal grandmother's house. N.T., 8/18/17 at 8. She testified that she was close with her grandmother and, from the time she was about four or five, she often slept at her grandmother's house during the week in the summer and on weekends during the school year, sometimes for extended periods of time. *Id.* at 11-12. She also testified that she was close with Appellant. *Id.* at 64.

The victim testified that at the time of the assault Appellant lived with her grandmother. *Id.* at 12-13. She stated that she would watch TV with Appellant sometimes, and they would sometimes walk to the store and talk about her life. *Id.* at 44. She testified that they spent at least one Christmas together. *Id.* at 56.

---

[2] The victim was born in February 2000. She was 15 years old when she reported the assault to the police.

She testified that, when she was about eight or nine years old, Appellant assaulted her in his bedroom at her grandmother's house. N.T., 8/18/17 at 8-9, 13, 16. She testified that she knew she was about eight or nine because her grandmother had bought her a dry erase board when she was that age because she had been having trouble with math in school, and she had been using it just prior to the assault. *Id.* at 13-14, 58. She testified that she had been in the living room on the evening in question when Appellant called her upstairs to his bedroom and assaulted her by putting her on his lap with her back to him, and telling her to open her legs. *Id.* at 14-16. The victim testified that when she resisted opening her legs, Appellant did it for her, and then touched her vagina, first over her clothing, and then under them. *Id.* at 16-17. She stated that Appellant inserted his finger in her vagina and then laid her on the bed. He told her to sit up, and he removed his pants halfway. He then grabbed her hand and forced her to touch his penis. *Id.* at 18-19. She testified that she and Appellant then heard her grandmother walk out of the adjoining room, and Appellant quickly and abruptly put his pants back on. *Id.* at 19-20. The victim testified that Appellant also touched her chest area over her clothes. *Id.* at 20.

The victim testified that she told her mother what had happened years later, when she was 13 and in 7th grade. *Id.* at 23. She stated that she decided to report the assault to police a year or more later when she learned that Appellant was again staying with her grandmother, and she was scared to see him. *Id.* at 29, 121. The victim's mother testified that Appellant's

reappearance coincided with the victim exhibiting "depressed" and "anti-social" behavior. *Id.* at 102.

Although Appellant did not testify, he moved for the admission of documents that he alleged supported his alibi for the entire period in which the victim said the assault could have occurred. In particular, the court admitted Philadelphia Prison Department records reflecting that Appellant was incarcerated from March 3, 2007, through and including August 10, 2009. It also admitted business records from North Philadelphia Health System indicating that Appellant was a patient at the Girard Medical Center from August 10, 2009, through and including October 9, 2009.

The jury convicted Appellant of the above charges on August 22, 2017. On December 5, 2017, the court sentenced him to an aggregate term of 10 to 20 years' incarceration followed by 10 years of reporting probation.[3] On December 15, 2017, Appellant filed a Post-Sentence Motion, which was deemed denied by operation of law on April 12, 2018.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

_____

[3] Specifically, the court sentenced Appellant to three concurrent terms of 10 to 20 years' incarceration for his Criminal Attempted Rape of Child, Aggravated Indecent Assault of Child, and Unlawful Contact with a Minor convictions, followed by two consecutive terms of 5 years' probation for his EWOC and COM convictions and one concurrent term of 5 years' probation for his Indecent Assault of a Child conviction.

1. Whether the trial court erred in finding [Appellant] guilty of Attempted Rape where the Commonwealth failed to show that [Appellant] made any attempt to penetrate the [victim?]

2. Whether the trial court erred in finding [Appellant] guilty of [EWOC] where the Commonwealth introduced no evidence that [Appellant] owed a duty of care or supervision to the [victim?]

3. Whether the trial court erred in finding [Appellant] guilty of any of the charges when the [victim] could not provide any date or range of dates on which the incident could have occurred, thereby leading to a conviction based on insufficient evidence which violated [Appellant's] due process rights under the state and federal constitutions[?]

Appellant's Brief at vii.

Each of Appellant's issues challenges the sufficiency of the Commonwealth's evidence. Accordingly, we review Appellant's claims with the following in mind.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "[O]ur standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Hutchinson*, 164 A.3d 494, 497 (Pa. Super. 2017) (citation omitted). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citation omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is

free to believe all, part, or none of the evidence." *Id.* (citation omitted). "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.* (citation omitted).

**Attempted Rape of a Child**

In his first issue, Appellant claims that the Commonwealth's evidence was insufficient to prove that he attempted to rape the victim. Appellant's Brief at 1-3. In support, Appellant cites the absence of evidence that he threatened to rape or kill the victim, tried to engage in oral sex with the victim, or removed the victim's clothing. *Id* at 2-3. He characterizes himself as having voluntarily stopped his assault on the victim prior to making "any attempt whatsoever at engaging in penetrative intercourse with" the victim. *Id.* at 3. He argues that because the victim's testimony established only that he touched the victim with his hands and fingers, and forced the victim to touch his penis, whether Appellant would have raped the victim is "merely a guess." *Id.* at 2. He concludes that "[w]ithout more, the touching of [the victim] alone does not constitute a substantial step towards the commission of [R]ape of a [C]hild and instead would merely be an Indecent Assault or Aggravated Indecent Assault. *Id.* at 3.

A defendant is guilty of Criminal Attempt if "with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. §901(a).

A person commits the offence of Rape of a Child if he "engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.

- 6 -

§3121(c). The use of force is not an element of the crime of Rape of a Child. In addition to its ordinary meaning, the term sexual intercourse is defined as "intercourse per os or per anus, with some penetration however, slight." *Commonwealth v. Wilson*, 825 A.2d 710, 714 (Pa. Super. 2003) (citations and quotations omitted).

To sustain Appellant's conviction for Attempted Rape of a Child, the Commonwealth had to prove that Appellant performed an act constituting a substantial step toward engaging in sexual intercourse with a child under the age of 13. As set forth *supra*, the Commonwealth introduced evidence that Appellant, the victim's uncle, lived with the victim's grandmother, and that the victim had a close relationship with both her grandmother and Appellant. It also provided evidence that Appellant lured the victim to his bedroom, touched her legs, vagina, and chest, and digitally penetrated her vagina before placing the victim on his bed, and removing his pants. He then took out his penis, grabbed the victim's hand and made her touch his penis. The Commonwealth's evidence also showed that it was only because the victim's grandmother came out of a nearby room that Appellant stopped the assault.

In explaining that the Commonwealth had presented sufficient evidence to support Appellant's Attempted Rape of a Child conviction, the trial court compared the instant facts favorably to *Commonwealth v. Moody*, 441 A.2d 371 (Pa. Super. 2002). The trial court explained that, in *Moody*, this Court affirmed a conviction of Attempted Rape of a Child where the defendant fondled the victim's genitalia and began to unzip his pants. *Id.* at 372. The

trial court here concluded that the instant Appellant's actions "surpass those in **Moody**[]" because "Appellant penetrated [the victim's ]vagina with his finger after which he forced her to fondle his genitalia." Trial Ct. Op., 5/30/19 at 5.[4]

We are unpersuaded by Appellant's argument and disagree with his assertion that the Commonwealth presented evidence of "touching [the victim] alone[.]" Moreover, we find Appellant's characterization of the circumstances under which he ceased the assault as "voluntary" disingenuous, and we reject his argument that the jury should have inferred from his "voluntariness" that he had no intention of escalating the assault to rape. Viewing the above evidence, and all reasonable inferences therefrom, in the light most favorable to the Commonwealth as verdict winner, as we must, we conclude that it was reasonable for the jury to infer that Appellant had performed acts constituting a substantial step toward engaging in sexual intercourse with the victim. Accordingly, Appellant is not entitled to relief on this claim.

---

[4] In its Appellee's brief, the Commonwealth now agrees with Appellant that it failed to present sufficient evidence to sustain his Attempted Rape of a Child conviction. Commonwealth's Brief at 9-13. In particular, it argues that the trial court's reliance on **Moody** is misplaced because there were additional facts and circumstances present in **Moody** and its progeny that led this Court to affirm the defendants' convictions. For the reasons stated above, we disagree with the Commonwealth's assessment.

**EWOC**

In his second issue, Appellant claims that the Commonwealth failed to adduce sufficient evidence to sustain his conviction of EWOC because it did not demonstrate that he had a duty of care or supervision to the victim. Appellant's Brief at 3. In particular, Appellant asserts that the victim's testimony that Appellant was her uncle, that she was close with him, and they sometimes walked to the store together was insufficient to establish that he exercised a duty of supervision or of care to her. *Id.* at 5. This is especially true, he argues, in light of her testimony that Appellant's presence at her grandmother's home was unpredictable, and her lack of testimony that they were ever at home alone, which would have implied that he had a duty to supervise her. *Id.*

In support of his argument, Appellant compares the facts of this case favorably to those in *Commonwealth v. Halye*, 719 A.2d 763 (Pa. Super. 1998), where this Court found that the Commonwealth failed to prove that the defendant, who was a one-time visitor in the victim's home, was in a position of supervising the victim at the time of the assault. *Id.* at 765. He distinguishes his case from *Commonwealth v. Brown*, 721 A.2d 1105 (Pa. Super. 1998), where this Court concluded that the evidence was sufficient to convict the defendant of EWOC because the victim lived with the defendant who had supervisory duties when the abuse occurred. *Id.* at 1108.

"A parent, guardian[,] or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person,

commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection[,] or support." 18 Pa.C.S § 4304(a)(1). The Criminal Code defines a "person supervising the welfare of a child" as a "person other than a parent or guardian that provides care, education, training[,] or control of a child." 18 Pa.C.S. § 4304(a)(3).

The statue criminalizing EWOC is protective in nature, and we construe it to "effectuate its broad purpose of sheltering children from harm." *Commonwealth v. Lynn*, 114 A.3d 796, 818 (Pa. 2015). Not all adults who reside with children have a duty of care, protection, or support to that child. *Brown*, 721 A.2d at 1108. To find a person liable of EWOC, the Commonwealth must establish that the person had such a duty and violated it. *Id.*

Endangering the welfare of a child is a specific intent crime and the intent element is a "knowing violation of a duty of care." *Lynn*, 114 A.3d at 819. To prove knowing intent, the Commonwealth must prove that:

> (1) the accused is aware of his/her duty to protect the child; (2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Id.*

Instantly, the Commonwealth presented evidence that at the time of the assault, Appellant had recently been released from prison and was living at his mother's home where the victim often stayed, sometimes for extended

- 10 -

periods. Unlike the defendant in **Halye**, who was a one-time visitor to the victim's home and not previously known to the victim, Appellant and the victim sometimes shared the victim's grandmother's home and had a close relationship. Although the evidence did not show that Appellant ever babysat or played with the victim, or performed any other quasi-custodial functions like the defendant in **Brown**, it demonstrated that Appellant showed a special interest in the care of the victim when they would walk to the store together and talk about the victim's life. In light of the broad purpose of the EWOC statute and the foregoing evidence, we find that the jury reasonably concluded that Appellant was guilty of the crime of EWOC.

**<u>Incident Date</u>**

In his final issue, Appellant claims that because the victim could not provide any date or range of dates on which the assault occurred, the Commonwealth's evidence was insufficient to convict him of any of the charges. Appellant's Brief at 7-9 (citing **Commonwealth v. Devlin**, 333 A.2d 888 (Pa. 1975). He also complains that the Commonwealth's failure to provide a specific date or reasonable date range violated his due process rights because it deprived him of the opportunity to raise competently an alibi defense. **Id.** at 9.

Although it "is the duty of the prosecution to fix the date when an alleged offense occurred with reasonable certainty . . . the Commonwealth does not always need to prove a single specific date of an alleged crime." **Commonwealth v. Koehler**, 914 A.2d 427, 436 (Pa. Super. 2006) (citations

- 11 -

omitted). The Commonwealth has the burden to prove "with a reasonable certainty and being within the statutory period" the commission of the offense. **Commonwealth v. Levy**, 23 A.2d 97, 99 (Pa. Super. 1941).

With respect to allegations of child sexual abuse, we afford the Commonwealth broad latitude when attempting to ascertain the date of the incidents. **See Commonwealth v. G.D.M., Sr.**, 926 A.2d 984, 990 (Pa. Super. 2007) ("Case law has established that the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of conduct."); **Commonwealth v. Groff**, 548 A.2d 1237, 1241 (Pa. Super. 1998) (explaining that "the [C]ommonwealth must be allowed a reasonable measure of flexibility when faced with the special difficulties involved in ascertaining the date of an assault upon a young child," given that when the victim is a young child it can be almost impossible to ascertain the exact date when a crime occurred); **Commonwealth v. Niemetz**, 422 A.2d 1369, 1373 (Pa. Super. 1980) (concluding that time is not of the essence in matters involving rape, IDSI, indecent assault of children, and corruption of minors).

Appellant relies on **Devlin**, *supra*, in support of his allegation that the Commonwealth's failure to give him sufficiently specific notice of when the assaults occurred rendered him unable to prepare a defense. In **Devlin**, the Commonwealth charged the defendant with sodomizing a mentally challenged adult who had the mental ability of a first- or second-grade child and the emotional stability of an even younger child. The Commonwealth alleged that

the crime occurred at some unspecified time during a 14-month period. The defendant argued that the Commonwealth's allegation as to the time of the crime was so vague that it precluded him from preparing an effective defense to the charges, and our Supreme Court agreed. Importantly, however, the Supreme Court declined to adopt a *per se* rule concerning the length of the time-period in which the Commonwealth must establish that the defendant had committed the crime. **Devlin**, 333 A.2d at 892. The Court emphasized that a case-by-case inquiry, which considered the nature of the crime and the age of the victim, was appropriate, and the Commonwealth must only fix the date of the offense "with reasonable certainty." **Id.** at 890-92.

In this case, the trial court considered the facts and the controlling authority and concluded that the Commonwealth had fixed the time frame of the charged offenses with "reasonable certainty." The court observed:

> There was sufficient evidence for the jury to conclude that the charged crimes occurred sometime after Appellant's incarceration or subsequent hospital admission and before [the victim's] tenth birthday. On the night of the incident, [the victim] stayed at her grandmother's house after Appellant had been released from jail when she was either eight or nine years old, which would be either in 2008 or 2009. Appellant was incarcerated from March 3, 2007 to August 10, 2009. He was a patient at Girard Medical Center on August 10, 2009 through October 9, 2009. Viewing the evidence in the light most favorable to the verdict[-]winner, the 3 to 5 month period during which the incident could have occurred defeats Appellant's insufficiency claim. Moreover, because time is not an essential element to any of the charges, Appellant's insufficiency claim does not bar the conviction of Appellant on any of the charges.
>
> Appellant's due process challenge on the basis that [the victim] did not provide a specific date or range of dates also fails because

[the victim] testified with a reasonable certainty that the incident occurred within a 3 to 5 month period.

\*\*\*

. . . The range of dates during which the incident could have occurred fell within the leeway courts have granted in cases concerning sexual offenses against children . . . Though **Devlin** established that there is no *per se* rule, this case nonetheless did not exceed the range in **Devlin**. Additionally, the following factors weigh against [] Appellant's due process challenge: testimony that the offense occurred after Appellant had been released from jail, [the victim's] young age, and her mother's testimony noticing signs of distress when Appellant reappeared in grandmother's life. Therefore, Appellant's due process claim is meritless.

Trial Ct. Op., at 7-8 (citations to the Notes of Testimony omitted).

Following our review, we conclude that, given the nature of the crimes, the age of the victim, and the fact that the date of the offense is not an element of the charged crimes, the testimony of the victim established the range of dates in which the assault occurred with reasonable certainty. Thus, Appellant's due process challenge fails.

**<u>Conclusion</u>**

Having determined that sufficient evidence supports Appellant's convictions and his due process rights were not violated, we affirm his Judgment of Sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/21/2020